CLARENCE A. PARTRIDGE *vs.* MIDDLESEX AND BOSTON STREET RAILWAY COMPANY.

Middlesex. March 15, 1915. — May 21, 1915.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Negligence*, Street railway. *Witness*, Examination: leading questions. *Practice, Civil*, Exceptions, Conduct of trial. *Evidence*, Opinion.

In an action against a street railway company for personal injuries caused by the plaintiff's horse shying and throwing the plaintiff out of his wagon, when the horse was "frightened by the loud and continuous ringing of a gong on a car operated by an employee of the defendant coming up behind him," the plaintiff in order to recover must prove that the noise was unusual, unnecessary and likely to frighten horses, or that the defendant's motorman knew or ought to have known of the manifestation of fright in season to make a reasonable effort to diminish it and that he failed to do so, or else that the motorman's use of the gong was of such a reckless and wanton character as to indicate a disregard of the plaintiff's safety in the street.

In this Commonwealth the admission of leading questions in the direct examination of a witness is within the discretionary power of the judge presiding at the trial and, at any rate when confined to reasonable limits, is not subject to revision by exception or otherwise.

In an action against a street railway company for personal injuries caused by the plaintiff's horse shying and throwing the plaintiff out of his wagon when the horse was "frightened by the loud and continuous ringing of a gong on a car operated by an employee of the defendant coming up behind him," interrogatories propounded in a deposition to the motorman who was operating the car at the time of the accident properly may be allowed by the presiding judge in the exercise of his discretion asking the witness, whether the horse appeared to be

frightened at any time before the accident, whether the witness had any intimation that the horse was likely to become frightened and to shy at the car, and whether the driver of the horse did anything to warn the witness that the horse was or was about to become frightened; because the witness's personal knowledge of the horse's manifestation of fright was or might be a material fact as bearing upon the character of his act in continuing to sound the gong.

Such witness also as a matter of discretion properly may be allowed to be asked on his direct examination whether or not there was any unusual or unnecessary ringing of the gong or blowing of the whistle at any time before the accident as alleged in the plaintiff's declaration, and may be allowed to answer that there was none, the conclusions of fact involved in this answer and in the answers to the other questions described above not being a sufficient reason for their exclusion.

TORT for personal injuries alleged to have been received by the plaintiff on the morning of November 20, 1907, while he was driving in an express wagon along Main Street in Cochituate, from his horse becoming frightened by the loud and continuous ringing of a gong on a car operated by an employee of the defendant that was coming up behind him, whereupon the plaintiff's horse shied, throwing the plaintiff out and injuring him. Writ dated October 9, 1912.

In the Superior Court the case was tried before *Quinn*, J. The defendant offered in evidence the deposition of one Jennison, then a resident of Los Angeles in the State of California, who was the motorman that was operating the car of the defendant at the time of the accident. The interrogatories to this witness, which with the answers to them were admitted by the judge against the plaintiff's exceptions, that were taken informally as stated in the opinion, were as follows:

Interrogatory 11. "Did the horse appear to be frightened at any time before the accident?" Answer, "It did not."

Interrogatory 12. "Did you have any intimation that the horse was likely to become frightened or to shy at the car?" Answer, "I did not."

Interrogatory 13. "Did the driver of the team do anything to warn you that his horse was, or was about to become frightened?" Answer, "He did not."

Interrogatory 14. "State whether or not there was any unusual or unnecessary ringing of the gong or blowing of the whistle at any time prior to the accident as alleged in the plaintiff's declaration." Answer, "There was none."

"The case was submitted to the jury under proper instructions and a verdict was rendered for the defendant." The plaintiff alleged exceptions, and the sentence last quoted is taken from the bill of exceptions.

*W. R. Bigelow,* (*L. L. Green* with him,) for the plaintiff.

*P. F. Drew,* (*W. U. Friend* with him,) for the defendant.

PIERCE, J. It is alleged in the bill of exceptions that while the plaintiff was driving a horse attached to an express wagon along Main Street in Cochituate it became "frightened by the loud and continuous ringing of a gong on a car operated by an employee of the defendant coming up behind him," and that as a result the horse shied, throwing the plaintiff out of the wagon and injuring him.

The mere ringing of a gong on an electric car in a public street is not in itself negligence. *Henderson* v. *Greenfield & Turner's Falls Street Railway,* 172 Mass. 542. When the noise of such ringing is alleged to have frightened a horse, the plaintiff, to recover damages for injury resulting therefrom, must establish that the noise was unusual, unnecessary and likely to frighten horses, or that the motorman knew or ought to have known of the manifestation of fright in season to make reasonable effort to diminish it and failed so to do; *Ellis* v. *Lynn & Boston Railroad,* 160 Mass. 341; or that the motorman in the use of the gong was reckless or wanton to a degree that indicated disregard of the plaintiff's safety in the street. *Aiken* v. *Holyoke Street Railway,* 184 Mass. 269.

The case was submitted to the jury "under proper instructions," and a verdict was rendered for the defendant.

During the course of the trial the defendant offered in testimony interrogatories numbered 11, 12, 13, 14, and the answers thereto contained in a deposition. The plaintiff objected to the introduction of this testimony on the ground that the questions were leading and called for conclusions. The testimony was admitted and exceptions thereto were saved, although informally taken. Exceptions were saved to all the questions because leading.

The admission of leading questions in this Commonwealth rests in the discretion of the presiding judge and is not subject to revision or exception. *Moody* v. *Rowell,* 17 Pick. 490, 498. *York* v. *Pease,* 2 Gray, 282, 283. *Green* v. *Gould,* 3 Allen, 465. *Francis* v.

*Rosa,* 151 Mass. 532, 535. And, were it to be held that the exercise of such discretion is to be confined to reasonable limits, there is nothing to justify the conclusion that such bounds were over-stepped in the present case. See *Commonwealth* v. *Dorr,* 216 Mass. 314, 318.

Moreover, as to interrogatories 11, 12 and 13 the witness's personal knowledge of the horse's manifestation of fright was or might be a material issue, — an issue quite distinct and distinguishable from that reasonable cause to know which a jury may impute to a man placed as this man was. *Jeddrey* v. *Boston & Northern Street Railway,* 198 Mass. 232. *Ahearn* v. *Boston Elevated Railway,* 194 Mass. 350.

The objection that the answers to the questions involve conclusions of fact is not tenable. So far as they do, such result is not objectionable because any canon of evidence is violated. The principle upon which such testimony is admissible is clearly stated in *Commonwealth* v. *Sturtivant,* 117 Mass. 122, and *Whittier* v. *Franklin,* 46 N. H. 23.

*Exceptions overruled.*