COMMONWEALTH *vs.* ERMIDES MARTINEZ.

No. 91-P-1151.

Middlesex. December 7, 1992. - February 17, 1993.

Present: BROWN, JACOBS, & PORADA, JJ.

*Practice, Criminal*, Argument by prosecutor, Comment by prosecutor, New trial. *Constitutional Law*, Self-incrimination.

Where the prosecutor at a criminal trial, at which the defendant's credibility was the central issue, went beyond permissible limits of cross-examination and improperly asked questions which could have led the jury to believe that an inference of guilt might be drawn from the failure of the defendant voluntarily to come forward with an offer to furnish physical evidence to the police or to the district attorney's office, the prosecutor's line of questioning was so impermissible as to create a substantial risk of a miscarriage of justice, requiring a new trial. [132-134]

INDICTMENTS found and returned in the Superior Court Department on December 12, 1990.

The cases were tried before *Sandra L. Hamlin*, J.

*John C. McBride* for the defendant.

*James D. Takacs*, Assistant District Attorney, for the Commonwealth.

BROWN, J. Not being content to permit the jury to decide whether the defendant's testimony was credible, the prosecutor proceeded, on cross-examination, to pummel the defendant with improper questions, creating a toxic effect which, in our view, was not (and probably could not have been) effectively neutralized. Contrast *Commonwealth v. Burke*, 373 Mass. 569, 573-574 (1977). In light of these improprieties, we are constrained to reverse his convictions and order a new

and, hopefully, a fairer trial.[1] Cf. *Commonwealth* v. *Vaughn*, 32 Mass. App. Ct. 435, 435-436 (1992).

Without laying any foundation, let alone a proper one (see note 3 *infra*), the prosecutor went beyond permissible limits of cross-examination and improperly asked questions which could have led the jury to believe that an inference of guilt might be drawn from the failure of the defendant voluntarily to come forward and provide the police and district attorney's office with statements, hair samples, blood samples, or the underwear he was wearing on the evening in question.[2] See *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 342-346, *S.C.*, 401 Mass. 302 (1987). Cf. *Commonwealth* v. *Teixera*, 396 Mass. 746, 752 (1986). The prosecutor, in an effort to show consciousness of guilt, permissibly could have asked the defendant about his failure to tell the police in post-Miranda statements that the victim had made sexual advances, when, at trial, he testified to such an act. See and compare *Commonwealth* v. *Lavalley*, 410 Mass. 641, 648-650 (1991); *Commonwealth* v. *McClary*, 33 Mass. App. Ct. 678, 684-686 (1992). What occurred here, however, went well beyond an attempt to alert the jury to any flaws or inconsistencies in the defendant's trial testimony, compare *Commonwealth* v. *Sherick*, 401 Mass. at 304-305; the "cross-examination [of the defendant] riveted attention on . . . incident[s] . . . [inapposite] to the matter truly at bar." *Commonwealth* v. *Yelle*, 19 Mass. App. Ct. 465, 470 (1985).

Inquiry suggesting that the defendant had some obligation to come forward voluntarily with an offer to furnish physical evidence to the police or the district attorney's office after the

---

[1]Fairness requires us to state that the performance of appellate counsel for the Commonwealth, who also was trial counsel, manifested a high degree of competence and exemplary appellate advocacy.

[2]The prosecutor asked the defendant the following series of questions:

"You never gave the police any hair samples?"

"And you never volunteered them, did you?"

"You never volunteered any blood samples either, did you?"

"And you never turned over [to the police] the underwear you were wearing that night . . . ?"

"Even though you know you've done nothing wrong, sir, you did nothing to assist the police at all in this case, did you?"

initiation of criminal proceedings is manifestly unfair. Cf. *Commonwealth* v. *Person*, 400 Mass. 136, 138-142 (1987). Pursuing such a line of questioning is particularly egregious where, as here, the police, in fact, never requested any specimen or other physical samples and the prosecutor made no showing of any attempt by law enforcement officials to obtain hair or blood samples by available lawful means.[3] Cf. *Commonwealth* v. *Lydon*, 413 Mass. 309, 313-315 (1992). In addition, by suggesting through this line of questioning that an inference of guilt could be drawn from the defendant's pretrial failure to come forward to the district attorney's office to speak, the prosecutor trampled on the defendant's right to remain silent. See *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. at 343 ("The privilege [against self-incrimination] should never fail of high respect and solid enforcement in our courts . . ."). "There is no question that, under the fundamental principles of jurisprudence, evidence of a criminal defendant's postarrest, post-Miranda silence cannot be used for the substantive purpose of permitting an inference of guilt . . . ." *Commonwealth* v. *Mahdi*, 388 Mass. 679, 694 (1983).

The defendant objected to only one of the questions in the impermissible line of inquiry.[4] Because, however, the case turned on the credibility of the parties, due to the paucity of physical evidence to support the rape, we conclude that this line of questioning was so impermissible as to create a substantial risk of a miscarriage of justice and require a new trial. See and compare *Commonwealth* v. *Alman*, 30 Mass. App. Ct. 721, 726 (1991).

---

[3]As to the inquiry regarding hair and blood samples, the Commonwealth concedes, as it well should, that those questions "may have been inappropriate given the lack of foundation in establishing that such samples had been requested by the police . . . ."

[4]That there was an objection only to the final improper question in the series is understandable as a reasonable and necessary tactical decision by defense counsel not to give the impression that the defendant was trying to conceal something. In any event, we think this line of questioning injected into the trial the possibility of a substantial risk of a miscarriage of justice.

This is yet another instance where "fifteen minutes of thoughtful and careful preparation [a lawyer's staple, for which there is no substitute] would have saved the Commonwealth much time and expense." *Commonwealth* v. *Kozec*, 21 Mass. App. Ct. 355, 367 (1985) (Brown, J., concurring). The judgments are reversed, and the verdicts are set aside.[5]

*So ordered.*

[5]The defendant raises two other claims of error on appeal which may arise on retrial. On the claim that certain evidence should have been admitted under an exception to the rape shield statute, G. L. c. 233, § 23B, it was within the judge's discretion to rule that the proposed evidence, as presented in the voir dire testimony of the medical doctor and the chemist, was not sufficiently probative to outweigh possible prejudice to the complainant. On the other claim, it was not error to admit the opinion of the examining physician that a described physical condition of the complainant was "more consistent with [the complainant's] history of the events that evening" than with certain other causes, namely cancer or an infection. See *Commonwealth* v. *Montmeny*, 360 Mass. 526, 528 (1971); *Commonwealth* v. *Lewandowski*, 22 Mass. App. Ct. 148, 150 (1986). However, we suggest that on retrial the question be reworded to avoid reference to the complainant's "explanation of what happened that evening" or "the history of events that evening."